**WO**                           NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Rhodes, | No. CV-14-08206-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Energy Marine LLC, *et al.*, | |
| Defendants. | |

At issue is Defendant Dances with Waves Houseboat, LLC's ("Dances with Waves") Motion for Summary Judgment (Doc. 79, MSJ), to which Plaintiff Nicole Rhodes filed a Response (Doc. 82, Resp.) and Defendant filed a Reply (Doc. 88, Reply). The Court finds this matter appropriate for resolution without oral argument, *see* LRCiv 7.2(f), and therefore denies Defendant's request for a hearing (Doc. 94). For the reasons that follow, the Court finds that Plaintiff has not met her burden of proof as to her negligence claims and concludes Defendant is entitled to judgment as a matter of law. The Court will therefore grant Defendant's Motion for Summary Judgment and deny as moot Defendant's Motion in the alternative for Exoneration from or Limitation of Liability to $125,000 in Accordance with Rule 9(h) and Supplemental Rule F of the Federal Rules of Civil Procedure and 46 U.S.C. §§ 30501, *et seq.*

**I.    BACKGROUND**

On June 21, 2014, an explosion aboard the houseboat M/V Dances with Waves, owned by moving Defendant, threw Plaintiff Nicole Rhodes off the vessel, causing her serious injuries. At the time, Plaintiff worked for Energy Marine, LLC, which Defendant

1 had hired to service and manage Dances with Waves. The explosion occurred immediately after two other Energy Marine employees, Stephen Hancock and Mark Haycock, had refueled the vessel, and no Dances with Waves personnel were present.

Upon boarding the vessel after the explosion, a National Park Service ranger "observed that the blower switch (switch that activates the blower for the purpose of ejecting the fuel fumes from the engine compartment and vessel bilge essential during fueling operations), was in the OFF position." (Doc. 80, DSOF Ex. C, Nat'l Park Serv. Gen. Report.) The ranger noted, "During all fueling operations and prior to initial startup procedures it is strongly advised to have the blower activated to remove combustible fuel fumes from the enclosed lower compartments of a vessel." (Nat'l Park Serv. Gen. Report.) The ranger observed that "[t]he blower tube had been completely melted in a pattern consistent with a lack of air flow through the blower system indicating that the blower itself was not in operation at the time of ignition." (Nat'l Park Serv. Gen. Report.)

Thomas Haycock, a boat pilot for Energy Marine, was responsible for driving houseboats to and from the fuel dock and making sure they got fueled properly. (Doc. 83, PSOF Ex. C, Haycock Dep. at 4-5.) With regard to fueling safety, his boss, Trent Sutherland, and the fuel dock associates trained him to make sure he attends the pump during fueling and then runs the blowers for at least four minutes when he is done. (Haycock Dep. at 7-9.) Haycock testified that, on the day of the explosion, he turned the blowers on after fueling and then left the vessel to go to the dockside store to pay for the fuel, buy snacks and talk to the associates, which "usually allows adequate time" for the blowers to have run long enough to reduce the risk of an explosion. (Haycock Dep. at 11-12.) Upon turning the engines on after returning to the vessel, he heard a loud noise, saw smoke coming out of the engine compartment, and realized that the "engine room flashed." (Haycock Dep. at 14-15.) Haycock testified that this was the only time he ever remembered seeing cleaning personnel such as Plaintiff aboard the vessel while it was at the fuel dock, and he believed cleaning personnel were not normally aboard during

1  fueling because they required the use of power, and no power was to be used during
2  fueling. (Haycock Dep. at 17-21.)

3        Stephen Hancock was the "check-off person" for Energy Marine, responsible for
4  checking houseboats as they arrived and left as well as assisting in pumping the septic
5  tanks and pumping fuel. (DSOF Ex. D, Hancock Dep. at 8-10.) He testified that he was
6  trained that the blowers had to run for a minimum of three minutes after fueling before
7  turning on the engines. (Hancock Dep. at 24.) He stated that, on the day of the explosion,
8  he turned the blower on after they finished fueling while Haycock went to pay for the
9  fuel, and he does not recall how long it took for Haycock to return before he turned the
10 engines on. (Hancock Dep. at 27-31.)

11       In support of her negligence claims, Plaintiff points to an Insurance Survey
12 performed on Dances with Waves in 2012. (PSOF at 4 ¶ 3.) The Survey divided its
13 findings and recommendations into three categories; (A) Safety Deficiencies, (B) Other
14 Deficiencies Needing Attention, and (C) Surveyors' Notes and Observations. (PSOF Ex.
15 5 at 14.) No findings or recommendations were made in the Safety Deficiencies category,
16 but the Other Deficiencies Needing Attention category included finding B6, which noted,
17 "The invertor on this vessel is connected to a large fuse box. The side of the fuse going to
18 the invertor panel was melted. Fuse was blown. (Fire hazard) Wires were pulled out of
19 fuse, and spliced together with black tape at time of survey." (PSOF Ex. 5 at 16.) With
20 regard to B6, the inspector offered the recommendation to "[i]nvestigate further. Repair
21 or replace as necessary. Full service by an electrical expert." (PSOF Ex. 5 at 16.)

22       David Whitehead, co-manager of Defendant, testified that all of the category B
23 deficiencies noted in the 2012 Survey were resolved and the manager at the time
24 submitted a report to the insurance company that items B1 through B7 were completed.
25 (PSOF Ex. 2, Whitehead Dep. at 25-27.) However, he could not identify the electrician
26 who completed the repairs and certified that items B1 though B7 were completed.
27 (Whitehead Dep. at 25-26.)

28

1    Plaintiff raises claims of negligence and gross negligence, alleging Defendant failed to adequately maintain its vessel. (Doc. 34, Am. Compl.) Defendant now moves for summary judgment on both counts against it.

## II.    LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

To establish a *prima facie* negligence claim, Plaintiff must demonstrate the following elements: "(1) the existence of a duty of care owed by the defendant to the plaintiff; (2) the breach of that duty of care; (3) a causal connection between the offending conduct and the resulting injury, *i.e.*, proximate cause; and (4) actual loss, injury, or damage suffered by the plaintiff." *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 1000 (D. Ariz. 2006) (citing *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001)). To survive a motion for summary judgment, Plaintiff must prove all four elements of her claim. *See, e.g.*, *Tau v. F/V Saint Jude*, 227 Fed. App'x 663, 664 (9th Cir. 2007) (affirming district court's grant of summary judgment in a negligence action under general maritime law because Plaintiff failed to establish that his injuries were foreseeable or that Defendants failed to exercise reasonable care under the circumstances).

Defendant concedes the first and fourth elements of Plaintiff's claim, but disputes Plaintiff's assertion that Defendant breached its duty of care or that this breach caused the resulting injury. Because the Court struck Plaintiff's expert testimony regarding causation (Doc. 95), Defendant argues that summary judgment is appropriate because Plaintiff has not, and cannot, establish either that Defendant breached its duty of care or that such breach caused the explosion and Plaintiff's injuries.

A negligence claim such as Plaintiff's requires a showing that Defendant's conduct fell below the duty of care and proximately caused Plaintiff's injuries. *See Benkendorf v. Advanced Cardiac Specialists*, 269 P.3d 704, 706 (Ariz. Ct. App. 2012). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am.*, 789 P.2d 1040, 1047 (Ariz. 1990) (citations omitted). Expert testimony is required whenever proof of an element of a claim, such as the duty of care or causation, calls for information that is outside an ordinary person's common knowledge. *See Claar v. Burlington N. R.R.*, 29

F.3d 499, 504 (9th Cir. 1994) (holding that a plaintiff must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 40-41 (2d Cir. 2004) (stating expert testimony as to causation is necessary "where a lay juror could not be expected to intuit the causal relationship between the acts in question and the injury"). Indeed, the case that gave birth to the current standard for a court's evaluation of the reliability of expert testimony, *Daubert v. Merrell Dow Pharm., Inc.*, involved a question of causation requiring special expertise, namely, whether a drug could cause limb defects. 43 F.3d 1311, 1313 (9th Cir. 1995).

The explosion aboard the vessel does not speak for itself. For its part, Defendant points to a National Park Service incident report that states that the condition of the boat upon inspection after the explosion was consistent with an explosion caused by a build-up of fumes resulting from a failure to run the blower after fueling—a task for which Energy Marine, not moving Defendant, was responsible. (Nat'l Park Serv. Gen. Report.) Plaintiff must be able to produce some reliable evidence of both of breach of duty by Defendant and the cause of the explosion for the Court to find a genuine dispute of fact and send this case to a jury. The Insurance Survey Plaintiff relies on is not sufficient, because even if the Survey were shown to be relevant, any conclusion that could be drawn from it regarding the explosion two years later would be mere speculation. Plaintiff has failed to proffer sufficient admissible evidence of either breach of duty by Defendant or causation to meet her burden of proof, and Defendant is thus entitled to summary judgment on Plaintiff's claims against it.[1] *See Carter,* 906 F.2d at 1376.

IT IS THEREFORE ORDERED granting Defendant Dances with Waves Houseboat, LLC's Motion for Summary Judgment (Doc. 79) on all of Plaintiff's claims against it, and denying as moot Defendant's Motion in the alternative for Exoneration from or Limitation of Liability to $125,000 in Accordance with Rule 9(h) and

---

[1] Plaintiff has not proffered sufficient evidence to support a finding that spoliation of evidence has occurred, as Plaintiff mentions in her Response.

1  Supplemental Rule F of the Federal Rules of Civil Procedure and 46 U.S.C. §§ 30501, *et*
2  *seq.*
3       IT IS FURTHER ORDERED denying Defendant Dances with Waves Houseboat,
4  LLC's Request for Oral Argument (Doc. 94).
5       IT IS FURTHER ORDERED directing the Clerk to enter judgment accordingly
6  and, because all of the claims in this matter are now dismissed, close this case.
7       Dated this 15th day of November, 2016.

                                          Honorable John J. Tuchi
                                          United States District Judge